[Civ. No. 13157. Fourth Dist., Div. Two. Oct. 11, 1974.]

MOBILEASE CORPORATION, Plaintiff and Appellant, v.
COUNTY OF ORANGE et al., Defendants and Respondents.

**COUNSEL**

Klinger & Leevan and Paul S. Leevan for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Philip C. Griffin and Mark W. Jordan, Deputy Attorneys General, as Amici Curiae on behalf of Plaintiff and Appellant.

Adrian Kuyper, County Counsel, and Laurence M. Watson, Deputy County Counsel, for Defendants and Respondents.

OPINION

GARDNER, P. J.—Plaintiff is engaged in the business of leasing mobile structures known as relocatable offices.

These relocatable offices are designed and built for human occupancy for industrial, professional or commercial purposes. They are manufactured with an undercarriage consisting of permanent wheels and axles. They are leased to companies that need temporary offices and do not wish to expend capital for permanent structures.

These units are constructed of wood with a metal floor and frame and are moved on the highways on their own wheels by being hitched to a motor vehicle. They are made by the same companies that manufacture mobile homes and are similar in construction and assembly to mobile homes and are moved on the highways in much the same manner as are mobile homes.[1]

These units are designed and manufactured to permit personal property to be carried on their structure. When the offices are delivered to their eventual sites, they may carry such items of personal property as the concrete piers on which they are placed, the skirts and steps which are to be attached, together with furniture, carpets, desks, chairs, tables, bookcases, filing cabinets, refrigerators and drinking fountains. Approximately 50 percent of the time the units actually carry such property when being moved on the highway.

The units are moved on highways in all parts of California and throughout the nation. They are leased for terms as short as 1 day, but the average lease is from 12 to 13 months. During the useful lifetime of a unit it will be moved on the highways many times.

Since 1937, the Department of Motor Vehicles (hereafter DMV) has classified these units as vehicles within section 670 of the Vehicle Code,[2]

---

[1]Plaintiff also furnishes another type of unit which is a relocatable office. However, this is simply the box without a running gear. Admittedly, these units do not qualify as vehicles, have never been used as such and their taxability by the county is not contested on this appeal.

[2]"A 'vehicle' is a device by which any person or property may be propelled, moved, or drawn upon a highway, excepting a device moved by human power or used exclusively upon stationary rails or tracks." (Veh. Code, § 670.)

and trailer coaches as defined in Vehicle Code, section 635.[3] With this classification the DMV and the California Highway Patrol have required that these units be licensed as trailer coaches. An official examination of these units by the DMV confirmed that the units are, in fact, trailer coaches to be licensed as such pursuant to the Revenue and Taxation Code, the Vehicle Code, the Health and Safety Code and the regulations of the DMV. The DMV has never considered these units to be special mobile equipment under Vehicle Code, section 575.[4]

In 1971, the Orange County Tax Assessor issued personal property escape assessments against plaintiff's units which had been on lease in Orange County on the tax lien dates in 1966 and 1967. Taxes were paid under protest and this lawsuit ensued. The court found for the county. On this appeal and in the trial court, the Attorney General appeared as amicus curiae on behalf of the DMV.[5]

### DISCUSSION AND DISPOSITION

Since 1935 (Stats. 1935, ch. 362, p. 1313), the Legislature has expressly declared that there shall be no local ad valorem taxation on vehicles subject to registration under the Vehicle Code. Section 10758, Revenue and Taxation Code, provides in pertinent part as follows: "The license fee imposed under this part [p. 5, div. 2, Rev. & Tax. Code, comprises §§ 10701 to

[3]At the times relevant to these proceedings, Vehicle Code, section 635, read as follows: "A 'trailer coach' is a vehicle, other than a motor vehicle, designed for human habitation, or human occupancy for industrial, professional or commercial purposes, for carrying persons and property on its own structure, and for being drawn by a motor vehicle." It is to be noted that the words "persons and" represented a legislative mistake since the carrying of persons in a trailer coach is prohibited by law. (§ 21712, Veh. Code.) Therefore, in 1971, the section was amended to delete those two words from the section. This deletion has no effect insofar as the issues involved in this litigation are concerned.

[4]Section 575, Vehicle Code, reads: " 'Special mobile equipment' is a vehicle, not self-propelled, not designed or used primarily for the transportation of persons or property, and only incidentally operated or moved over a highway, excepting implements of husbandry."

[5]Through the Attorney General, the DMV contends that the trial court's decision renders ineffectual that department's administrative duty of determining what is a vehicle and requiring registration of that vehicle, thus permitting a local agency to exercise that duty without considering the statewide implications of that act. It further contends that the Legislature has invested the DMV with the authority to administer the Vehicle Code and since the question of the transmutable nature of vehicles is statewide in scope, only legislation and not judicial fiat should be permitted to alter that scope. It further contends that the trial court's decision and the county's action have a far more significant effect than the immediate consequences to plaintiff since the decision applies equally to mobile homes since mobile homes are trailer coaches and that subjecting them to the imposition of the type of tax attempted by the county will have potentially disastrous statewide consequences.

11005.6] is in lieu of all taxes according to value levied for state or local purposes on vehicles of a type subject to registration under the Vehicle Code whether or not the vehicles are registered under the Vehicle Code. ¶ 'Vehicle of a type subject to registration under the Vehicle Code,' as used in this section, includes, but is not limited to (a) any motor vehicle in the inventory of vehicles held for sale by a manufacturer, distributor or dealer in the course of his business, (b) any unoccupied trailer coach in the inventory of trailer coaches held for sale by a manufacturer, distributor or dealer in the course of his business . . . ."[6]

■ The lower court avoided the effect of Revenue and Taxation Code, section 10758, by finding that the relocatable offices were not trailer coaches but rather were special mobile equipment and, therefore, under Vehicle Code, section 4010, exempt from registration by the DMV. Therefore, reasoned the trial court, since they were special mobile equipment, they were taxable by the county. In so holding, the trial court erred.

The facts in this case are not in conflict. Under these facts, plaintiff's relocatable offices are trailer coaches.

Under Vehicle Code, section 635, a trailer coach is:

(a) A vehicle. There is no conflict but that under Vehicle Code, section 670, these units are vehicles and the trial court so found.

(b) Designed for: (1) Human habitation, or human occupancy for industrial, professional or commerical purposes. Again, there is no contention to the contrary and the trial court so found. (2) For carrying persons or property on its own structure. The trial court found that the units were not designed "primarily" for this purpose. See discussion below. (3) For being drawn by motor vehicles. Again, the evidence is undisputed that this is true and the trial court so found.

---

[6]The Legislature has reaffirmed the clear meaning of this section in the language of an emergency clause to the 1964 amendment to this section which added the second paragraph. This emergency clause reads: "The amendments which are made to Section 10758 of the Revenue and Taxation Code by Section 1 of this act do not constitute a change in, but are declaratory of, the preexisting law. ¶ This act is an urgency measure necessary for the immediate preservation of the public peace, health or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting such necessity are: ¶ *Although the laws of California clearly indicate, and the Attorney General has ruled, that automobiles and trailer coaches in the inventory of the manufacturer, distributor, or dealer on the first Monday in March are exempt from local ad valorem property taxes, one county has construed the law differently so that the taxpayers in that county are presently exposed to unequal and unfair taxation. This situation must be cured without delay, as will be the case if this bill becomes effective immediately.*" [Italics added.] (Stats. 1964, 1st Ex.Sess., ch. 53, p. 190.)

However, as indicated, the trial court found that these units were not designed "primarily" for carrying persons or property on their structure. This is not the test under Vehicle Code section 635. The only evidence before the court was that these units were *designed* to carry property (or even persons had such carriage been legally permissible), and had the capacity to carry property within their structure. The evidence is uncontradicted that over 50 percent of them do so. There is nothing in the language of the statute which requires that any one of these design elements constitute the "primary use" of a unit.[7]

The uncontradicted evidence is that plaintiff's units are (1) vehicles, and are (2) designed for (a) human occupancy for industrial, professional or commercial purposes, (b) for carrying property on their own structure, and (c) for being drawn by motor vehicles. There is no requirement that the units be primarily designed for carrying persons or property.

■ It is a basic principle of statutory construction that where the words are clear and free from ambiguity, a court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. The judicial function is simply to ascertain and declare what is in terms or in substance contained in the statute and not seek hidden meanings not suggested by the statute or by the available extrinsic aids. (*People* v. *Knowles*, 35 Cal.2d 175, 183 [217 P.2d 1].)[8]

---

[7]The element of "human habitation" is not applicable here. "Human habitation" has reference to the trailer coaches which are mobile homes. (See Health & Saf. Code, §§ 18008, 18211.) These units are not mobile homes. However, they were designed for and, in fact, were used for human occupancy for the specific purposes enumerated in the section.

[8]Under the doctrine of contemporaneous administrative construction, the classification by the DMV of these units as trailer coaches for over 30 years is entitled to great weight. However, it is the duty of the court when a question of law is properly presented to state the true meaning of the statute since the ultimate interpretation of a statute is an exercise of the judicial power. (*Bodinson Mfg. Co.* v. *California E. Com.*, 17 Cal.2d 321, 325-327 [109 P.2d 935].) Here, there is no conflict as to the facts and a pure problem of statutory interpretation is presented.

We decline a suggestion of the Attorney General that the judgment be reversed because of the failure of the trial court to make a finding that the classification of the DMV was arbitrary and capricious. The instant case cannot be compared to those cases in which such a failure was deemed fatal to the trial judge's decision. (Eg., *Henry's Restaurants of Pomona, Inc.* v. *State Bd. of Equalization*, 30 Cal.App.3d 1009 [106 Cal.Rptr. 867] "bulk sales of food" as distinguished from "food ordinarily sold for immediate consumption"; and *Mission Pak Co.* v. *State Board of Equalization*, 23 Cal.App.3d 120 [100 Cal.Rptr. 69], a question of whether glazed fruit was properly classified as "candy or confectionery" or should have been classified as "fruit or fruit products."

When the trial court concluded that these units were not trailer coaches but were to be classified as special mobile equipment under Vehicle Code, section 575, that court was in error.

Under Vehicle Code, section 575, special mobile equipment is defined as (1) a vehicle; (2) not self-propelled; (3) not designed or used primarily for the transportation of persons or property; and (4) only incidentally operated or moved over the highways.

Plaintiff's units are not moved "only incidentally" over the highways. To the contrary, they are moved regularly over the highways as a necessary and substantial part of their use.

The Legislature has treated "special mobile equipment" and special construction equipment similarly. Both are exempt from registration under the same statute (Veh. Code, § 4010) and both are subject to the same lighting requirements (Veh. Code, § 25800 et seq.).

The word "equipment" is the important distinction. Equipment ordinarily means "the implements used in an operation or activity; apparatus." (Webster's 7th New Collegiate Dict.) The Legislature in using the word "equipment" in the definition of special mobile equipment and special construction equipment intended to exempt from registration vehicles that would be used at a particular jobsite as a piece of equipment such as an apparatus would be used in connection with some construction or mechanical work. The units in question in this case are not equipment and in no way partake of the character of an apparatus.

The only reported cases involving special mobile equipment involve apparatus or equipment as distinguished from housing such as plaintiff's relocatable offices.

In *Standard Oil Co.* v. *Philbrick,* 47 Cal.App.2d 591 [118 P.2d 497], the question is whether plaintiff's "portable draw works" was a "trailer" under the 1935 Vehicle Code and subject to registration and the payment of vehicle license fees—or was "special mobile equipment" and not subject to registration. The facts of the case as stated are: "Plaintiff had purchased a trailer chassis consisting of a bare frame and running gear with six wheels equipped with twelve pneumatic tires, had cut off the rear of the frame, had bolted four 'H' beams crosswise and then had mounted and bolted on this frame a 'draw works' weighing in excess of 20,000 pounds, consisting of a hoisting drum, sand reel, catheads and rotary sprocket with four chain driven shafts communicating the driving power to said hoisting drum, catheads and rotary sprocket, and with a gas engine also bolted to the frame. It was not self-propelled, the draw works and gas engine fully occupied the

entire surface of the chassis and no space was provided for the transportation of persons or property thereon and it has never been used for the transportation of persons or property other than the draw works itself, which was bolted on. It was moved over the highway only going from the place of storage to an oil well where it was to be used and back to the place of storage. The total weight of such portable draw works was 34,000 pounds." (*Standard Oil, supra,* pp. 592-593.) Under these facts the court concluded that the portable draw works was not a trailer but constituted special mobile equipment.

In *McConnell* v. *Underwriters at Lloyds,* 56 Cal.2d 637 [16 Cal.Rptr. 362, 365 P.2d 418], it was stipulated by the parties that the compressor involved, which was moved by a motor vehicle, was special mobile equipment.

In *Ryan* v. *Mike-Ron Corp.,* 226 Cal.App.2d 71 [37 Cal.Rptr. 794] [disapproved on another point in *Keene* v. *Harling,* 61 Cal.2d 318, fn. 2 at p. 323 (38 Cal.Rptr. 513, 392 P.2d 273)], the vehicles in question were a large compressor mounted on a four-wheel trailer, a small compressor mounted on a two-wheel trailer and a wagon drill frame mounted on a two-wheel trailer. Here, the court made no decision as to whether these vehicles were vehicles or special mobile equipment remanding that issue to the trial court for determination. The case was tried on another issue and the court simply held that whether or not these units were special mobile equipment presented a factual question to be determined by the trial court on remand.

In *Bigge Crane Rental Co.* v. *County of Alameda,* 7 Cal.3d 414 [102 Cal.Rptr. 513, 498 P.2d 193], large truck cranes used principally in construction work, which were not licensed by the DMV, were held to be subject to county ad valorem taxes. No mention of Vehicle Code, section 575, appears in this case.

Special mobile equipment simply means some type of apparatus or equipment mounted or bolted to a trailer chassis. However, the relocatable offices involved in the instant litigation bear no resemblance to anything that could be considered as apparatus or equipment.

Plaintiff's relocatable offices clearly come within the provisions of Vehicle Code, section 635, subject to registration and the payment of vehicle license

fees. The county assessor was in error in levying a personal property escape assessment against them.

Judgment reversed.

Kerrigan, J., and Kaufman, J., concurred.